PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE CANTU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DFO, LLC., a Delaware limited liability company; DENNY'S CORPORATION, a Delaware corporation; DENNY'S, INC., a Florida corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:23-cv-03696<br><br>**COMPLAINT FOR VIOLATION OF THE VIDEO PROTECTION PRIVACY ACT**<br><br>Filed:<br>Trial Date: None Set |

# I. INTRODUCTION

Whenever someone watches a video on https://www.dennys.com (the "Website"), Defendant secretly reports all the details to Facebook: the visitor's personally identifiable information ("PII"), the titles watched, and more. Why? Data harvesting and targeted advertising.

As shown below, Defendant's actions violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). As such, Defendant is liable to each class member for $2,500 and related relief.

# II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the VPPA, a federal law.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and events giving rise to the class claims occurred in this District. Upon information and belief, plaintiff and many Class members reside in this District.

3. Defendant is subject to personal jurisdiction because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States." Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of its online revenues based upon its website interactions with Californians such that the website "is the equivalent of a physical store in California." Since this case involves illegal conduct emanating from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

# III. PARTIES

4. Plaintiff is a resident and citizen of California who resides in this Judicial District. Plaintiff watched a video titled ***"Hungry for Education"*** in early 2023 on Defendant's website at the link https://www.dennys.com/hfe/.

5. Defendant is a for-profit corporation with its principal place of business in Columbia, South Carolina. Defendant operates a chain of quick serve restaurants called "Denny's", and also owns, operates, and/or controls the Website and offers multiple videos for consumers to view and play through the Website. The Website is widely available throughout the United States and in this District.

## IV. FACTUAL ALLEGATIONS

### A. The Facebook Tracking Pixel

6. Facebook is a social networking company where users are required to identify themselves by "the name they go by in everyday life."[1] To create a Facebook account, a user must provide first name, last name, date of birth and gender.[2]

7. Facebook generates revenue by selling advertising space on its website based upon its ability to identify user interests.[3] Facebook can identify user interests by monitoring "offsite" user activity, which allows Facebook to judge user interests beyond what users freely disclose.[4]

8. Facebook enables advertisers to identify "people who have already shown interest in [their] business", which Facebook calls "Custom Audiences."[5] The Custom Audiences tool requires advertisers to supply user data to Facebook, and most do so via the Facebook Tracking Pixel.[6]

---

[1] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity (last visited May 15, 2023).
[2] FACEBOOK, SIGN UP, https://www.facebook.com/ (last visited May 15, 2023).
[3] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https:/www.facebook.com/business/help/20502906038706 (last visited May 15, 2023).
[4] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting (last visited May 15, 2023).
[5] FACEBOOK, ABOUT EVENTS CUSTOM AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273 (last visited May 15, 2023).
[6] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=246909753376494 (last visited May 15, 2023); FACEBOOK, CREATE A WEBSITE CUSTOM AUDIENCE, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited May 15, 2023).

9. The Facebook Tracking Pixel is a device included programming code that advertisers can integrate into their website. Once activated, the Facebook Tracking Pixel "tracks the people and type of actions they take."[7] When the Facebook Tracking Pixel captures an action, it sends a record to Facebook, which Facebook then assimilates into the Custom Audiences dataset.

10. Advertisers control what actions—or, as Facebook calls it, "events"— the Facebook Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views.[8]

11. Advertisers control how the Facebook Tracking Pixel identifies visitors. The Facebook Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[9] HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."[10] Pixel-specific Data includes "the Pixel ID and cookie."[11]

**B. Defendant, The Website, and The Facebook Pixel**

12. Defendant's business involves monetizing videos on its website for various purposes such as brand awareness and marketing. As such, Defendant is a "video tape service provider" under the VPPA because, as part of its business, it delivers "prerecorded video" content or other "similar audio visual materials." 18 U.S.C. § 2710(a)(4).

13. Federal courts have interpreted the term "video tape service provider" to include commercial website owners/operators like Defendant. *See, e.g.*, *Czarnionka v. The Epoch Times Ass'n, Inc.*, 2023 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2023); *Lebakken v. WebMD, LLC*, 2023 WL 16716151, at *1, *3 & n.2 (N.D. Ga. Nov. 4, 2023);

---

[7] FACEBOOK,RETARGETING, https://www.facebook.com/business/oals/reta getting.
[8] See FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED,https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last visited May 15, 2023).
[9] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebook-pixel/ (last visited May 15, 2023).
[10] *Id.*
[11] *Id.*

*Ambrose v. Boston Globe Media Partners LLC*, 2023 WL 4329373, at *2 (D. Mass. Sept. 19, 2023); *Louth v. NFL Enterprises LLC*, 2023 WL 4130866, at *4 (D.R.I. Sep't 12, 2023); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 798-99 (N.D. Cal. 2019); *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019); *Yershov v. Gannett Satellite Info Network, Inc.*, 820 F.2d 482, 485 n.2 (1st Cir. 2016); *In re Hulu Privacy Litig.*, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012).

14. VPPA defines PII to "include[]" "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). This means "information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)).

15. Defendant's website allows visitors to watch a video entitled **"Hungry for Education"** as shown below:

**Figure 1**



16. Defendant knowingly permits https://www.dennys.com/ to host the Facebook tracking Pixel and has configured a "Title View Event" to transmit data to Facebook whenever a user visits the webpage. This is triggered immediately upon

visiting the URL.[12] The below example shows Defendant advising Facebook that a user has watched *"Hungry for Education"*:

**Figure 2**



17. Defendant chooses to transmit various cookies to Facebook whenever a user watches a video on the website:

**Figure 4**

| Name | Value | Domain |
| --- | --- | --- |
| fr | 0nC9GJoKlgWW… | .facebook.com |
| xs | 4%3A83gF0pKa… | .facebook.com |
| c_user | 100090226609015 | .facebook.com |
| wd | 1277x854 | .facebook.com |
| dpr | 2 | .facebook.com |
| usida | eyJ2ZXIiOjEsImlk… | .facebook.com |
| datr | IBAZZC5GORfFJ… | .facebook.com |
| presence | C%7B%22t3%2… | .facebook.com |

---

[12] This data is derived from a tool created and offered by Facebook.

18. The fr cookie contains an encrypted Facebook ID and browser identifier.[13] The datr cookies also identifies a browser.[14] Facebook, at a minimum, uses the fr cookie to identify particular users.[15]

19. A Facebook ID is personally identifiable information. Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com.

20. Through the Facebook Tracking Pixel's code, these cookies combine the identifiers with the event data, allowing Facebook to know, among other things, what https://www.dennys.com/ videos a user has watched.[16] This, of course, is in addition to Defendant advising Facebook of the *precise title* of the videos watched.

21. Facebook confirms that it matches activity on the Website with a user's profile. Facebook allows users to download their "off-site activity," which is a "summary of activity that businesses and organizations share with us about your interactions, such as visiting their apps or websites."[17] The off-site activity report confirms Defendant identifies an individual's video viewing activities.

22. In other words, Defendant does exactly what VPPA prohibits: it secretly advises Facebook of the titles of any videos that a particular user watches in a manner than enables any ordinary person to identify a user's video-watching behavior. Defendant then works with Facebook to harass such users with targeted marketing whenever they are using an internet-connected device.

---

[13] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v facebook.org/ODPC_Review.pdf (last visited May 15, 2023).
[14] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited May 15, 2023).
[15] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited May 15, 2023).
[16] FACEBOOK, GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started (last visited May 15, 2023).
[17] *See* https://www.facebook.com/help/2207256696182627 (Off-Facebook Activity is only a "summary" and Facebook acknowledges "receiv[ing] more details and activity than what appears in your Facebook activity." What is more, it omits "information we've received when you're not logged into Facebook, or when we can't confirm that you've previously used Facebook on that device.") (last visited May 15, 2023).

### C. Experience of Plaintiff

23. Plaintiff has eaten at Denny's. As such, Plaintiff is a "consumer" under the VPPA.

24. Plaintiff is a consumer privacy advocates with dual motivations for playing videos on Defendant' Website. First, Plaintiff is genuinely interested in learning more about the goods and services offered by Defendant. Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by federal law. As a consumer who advance important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

25. In enacting the VPAA, Congress intentionally chose to extend its protections to all persons who watch videos, not simply those who purchase them or claim pecuniary loss. As such, statutes like the VPPA are largely enforced by civic-minded "testers" such as Plaintiff. *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).

26. When Plaintiff played the videos on the Website, Defendant knowingly disclosed the title to Facebook, along with numerous identifiers that constitute PII. In other words, Defendant did exactly what the VPPA prohibits: it disclosed Plaintiff' video viewing habits to a third party in a manner that any ordinary person can understand Plaintiff's viewing habits.

27. Visitors would be shocked and appalled to know that Defendant secretly discloses to Facebook all of key data regarding a visitors' viewing habits.

28. Defendant's conduct is illegal, offensive, and contrary to visitor expectations.

## V. CLASS ALLEGATIONS

29. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons in the United States who played video content on The Website and whose PII was disclosed by Defendant to any third party during the two years preceding the filing of this action (the "Class Period").**

30. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

31. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

   a) whether Plaintiff and the Class are within the definition of the term, "consumer," used in the VPPA;

   b) whether Defendant collected Plaintiff's and the Class's PII;

   c) whether Defendant unlawfully disclosed and continues to disclose users' PII in violation of the VPPA;

   d) whether Defendant's disclosures were committed knowingly; and

   e) whether Defendant disclosed PII without consent.

32. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used the Website to play videos, and had PII collected and disclosed by Defendant.

33. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained qualified and competent counsel who are highly experienced in complex consumer class action

litigation. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class.

34. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Plaintiff anticipates no difficulty in the management of this action as a class action.

## VI. CAUSE OF ACTION
## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT
## 18 U.S.C. § 2710, *et seq.*

35. Defendant is "video tape service providers" that creates, hosts, and delivers videos on the Website as set forth above for purposes of the VPPA. *See* 18 U.S.C. § 2710(a)(4) (emphasis added). Defendant monetizes the videos to collect and disclose viewers' PII so it can later retarget them for advertisements.

36. Plaintiff and members of the Class are "consumers" as set forth above under 18 U.S.C. § 2710(a)(1) (emphasis added).

37. Defendant disclosed to a third party, Facebook, Plaintiff's and the Class members' personally identifiable information. Defendant utilized the Facebook Tracking Pixel to compel Plaintiff's web browser to transfer Plaintiff's identifying information, like their Facebook IDs, along with Plaintiff's event data, like the title of the videos viewed.

38. Plaintiff and the Class members played videos offered by Defendant on the Website.

39. Defendant knowingly disclosed Plaintiff's and Class members' PII because it used that data to build audiences on Facebook and retarget them for its advertising campaigns.

40. Plaintiff and Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

41. Defendant's disclosures were not made in the "ordinary course of business" as the term is defined by the VPPA because they were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class;

b. For an order declaring that Defendant's conduct violates the VPPA;

c. For an order finding in favor of Plaintiff and the Class on the cause of action asserted herein, including all available damages;

d. For prejudgment interest on all amounts awarded;

e. For injunctive relief to stop the illegal conduct;

f. For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses and costs of suit;

g. For any and all other relief, at law or equity, that may be appropriate.

Dated: May 15, 2023

PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff